# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

TIMOTHY RYAN DAVIS,

    Plaintiff,

v.                                          Case No. 6:20-cv-1053-GJK

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## MEMORANDUM OF DECISION[1]

Timothy Ryan Davis (the "Claimant"), appeals a final decision of the Commissioner of Social Security (the "Commissioner"), denying his claim for Social Security Disability Benefits ("DIB") and supplemental social security ("SSI"). Doc. Nos. 1, 17. Claimant alleges an onset date of May 22, 2014. R. 16. Claimant's date last insured for his DIB claim is September 30, 2015. R. 17. Claimant filed his application for SSI on April 15, 2016. *Id.* Claimant argues that the Administrative Law Judge (the "ALJ") erred in: 1) assigning limited weight to a treating physician's opinion; 2) finding Claimant's mental impairments were not severe; and 3) failing to consider Claimant's mental impairments in establishing his residual functional capacity ("RFC"). Doc. No. 17 at 11, 17. Upon

---

[1] Magistrate Judge David A. Baker substituting for Magistrate Judge Gregory J. Kelly.

consideration of the parties' arguments and the record, the final decision of the Commissioner is **AFFIRMED.**

I. **STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla–i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II. ANALYSIS.

The ALJ found that Claimant had the following severe impairments: status post left distal clavicle resection, hearing loss, spine disorders, and osteoarthritis. R. 19. The ALJ found that Claimant's medically determinable mental impairments of anxiety, depression, and a learning disorder, considered singly and in combination, were non-severe. R. 19. The ALJ found that despite these impairments Claimant had the residual functional capacity ("RFC") to perform light work with the following restrictions:

> [C]laimant is limited to lifting 20 pounds occasionally and lifting and carrying 10 pounds frequently. The claimant is limited to standing/walking for about six hours during an eight-hour workday. The claimant can sit for up to 6 hours during an eight-hour workday. The claimant should never climb ladders, ropes, or scaffolds but can frequently climb ramps and stairs. The claimant can occasionally crawl. The claimant is a right hand dominant individual. He is limited to occasional overhead reaching with the non-dominant left upper extremity. The claimant should avoid concentrated exposure to extreme cold, vibration, use of moving machinery, and unprotected heights. He is limited to occupation with no more than a moderate noise intensity level as that terms is defined by the Dictionary of Occupational Titles (DOT).

R. 21-22.

### A. *Dr. Miltenberger's Functional Capacity Opinions*

Dr. Miltenberger began treating Claimant in June 2018, after his date last insured, for torticollis and unspecified hip and knee pain. R. 26. On January 10,

2019, Dr. Miltenberger offered an opinion that Claimant could sit, stand or walk less than two hours each in an eight hour period, could not lift 10 pounds, could never twist, stop, crouch, or climb, would need to take unscheduled breaks, that he would miss more than four days of work per month, and that he had significant limitations in doing repetitive reaching, handling, or fingering. R. 974-76.

The ALJ gave Dr. Miltenberger's opinion limited weight because: 1) Dr. Miltenberger's physical exam findings were essentially unremarkable with no significant or ongoing abnormalities noted (although Claimant reported he was awaiting approval for hip surgery in October 2018) (citing Ex. 22F/26); Claimant reported waxing his car in 2015, taking yoga in 2017 (Ex. 17F), and riding a bicycle 10 miles in early 2018 (Ex. 22F/14); Claimant's physical examination at Shands Neurology Clinic in August 2018 showed Claimant with 5/5 strength in all tested muscle groups, no edema, normal gait, and a normal EEG (citing Ex. 22F/16-18; 26F); and Claimant received conservative treatment for his pain. R. 26, 28. The ALJ found that the objective findings, course of treatment, and overall evidence were not consistent with the level of severity opined, including the inability to lift any weight, twist, stoop, crouch, or climb. *Id.* The ALJ also found Dr. Miltenberger's opinion inconsistent with Claimant's reported activities of daily living. *Id.*, R. 27-28.

Claimant argues that the ALJ did not offer "sufficient justification" for giving Dr. Miltenberger's opinion little weight. Doc. No. 17 at 11. Claimant also argues that none of the ALJ's findings were supported by substantial evidence because Dr. Miltenberger's treatment notes contradict the ALJ's reliance on unremarkable objective medical findings. *Id.* at 13. Claimant focuses on his own complaints that appear in the treatment notes for the most part and does not address the objective findings. *Id.* Claimant argues that his muscle spasms, hip, knee, and back pain support Dr. Miltenberger's findings. *Id.* Claimant also argues that the record contradicts the ALJ's finding that Claimant only received conservative treatment for his pain. *Id.* Claimant cites his arthroscopic surgery following his initial work accident in 2014,[2] and recent records that reflect osteoarthritis in his right knee and hip, with the need for future surgery on his hip and knees, as well as degenerative changes in his cervical spine as contradicting the ALJ's finding of conservative treatment. *Id.* at 13-14.

Claimant next argues that the ALJ also erred in finding that Claimant's daily activities contradicted Dr. Miltenberger's findings because his testimony at the hearing was that he could bathe and dress himself, but he did not do chores[3],

---

[2] Claimant was involved in a bicycle accident in December 2013 while working as a service technician at a bicycle shop. R. 592. He suffered a shoulder contusion, knee contusion, and face contusion. R. 539. As a result, in May 2014 he had a left shoulder arthroscopy, closed Mumford procedure, a resection of his distal clavicle, and acromioplasty. R. 550-51.

[3] The ALJ noted that Claimant does not do household chores because he has a housecleaner who is paid by his mother. R. 23.

instead he takes medications and lays on the couch using heating pads, ice and stretching exercises. *Id.* at 14. Claimant argues that his inability to complete simple daily tasks without exacerbating his pain contradicts the ALJ's finding that he could perform light work. *Id.*

Claimant next argues that the ALJ erred by giving more weight to another expert's opinion than to Dr. Miltenberger's opinion. *Id.* Claimant first saw Dr. Schwartzberg in September 2014 for evaluation and treatment related to his shoulder. R. 23. Based on a functional capacity evaluation performed in October 2014, Dr. Schwartzberg opined that Claimant could lift no more than 50 pounds to waist level, and 30 pounds overhead, lifting no more than 15 pounds with the upper left extremity.[4] R. 27 (citing Ex. 6F/8 (R. 589)). In the same functional capacity evaluation, Claimant was also found to have no limitations in standing, sitting, or walking and he demonstrated an ability to perform all postural activities at least frequently and could function at the medium physical demand category (Ex. 8F/15 (R. 648)). R. 24. The ALJ gave Dr. Schwartzberg's opinion partial weight finding that Claimant's restrictions were more consistent with a reduced range of light exertion work. R. 27.

---

[4] Claimant argues that the opinion indicates that he could lift more weight with his injured left shoulder than his non-injured right shoulder, but the opinion offered by Dr. Schwartzberg does not support this argument as there are follow-up notes, cited by the ALJ, with the correct information even though the underlying evaluation appears to have transposed the two restrictions. R. 589.

In *Winschel v. Commissioner of Social Security*, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d 1176, 1178-79 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating, and specialists more than non-specialists. 20 C.F.R. § 404.1527(c). A treating physician's opinion is still entitled to significant weight even if he did not treat the claimant until after the relevant adjudicatory period. *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir.

2005) (quoting *Phillips*, 357 F.3d at 1240-41).[5] A failure to specifically articulate evidence contrary to treating doctor's opinion requires remand. *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008); *Paltan v. Comm'r of Soc. Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

Claimant is essentially asking this Court to reweigh the record evidence, which is something the Court cannot do. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Court finds that there was substantial evidence to support the ALJ's decision to afford Dr. Miltenberger's opinion little weight. The ALJ relied on the objective medical findings and Claimant's activities of daily living. Thus, there was substantial evidence to support the ALJ's decision and the Court finds no reason to disturb that decision on review. *See D'Andrea v. Comm'r of Soc. Sec.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it.").

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

B. *Claimant's Mental Impairments*

Next, Claimant argues that the ALJ erred in finding Claimant's mental impairments were not severe at step two. Doc. No. 17 at 17. At step two, the ALJ must determine whether Claimant has a medical impairment which is severe. 20 C.F.R. § 416.920(a)(4)(ii). The severity of an impairment is "measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Lucas v. Berryhill*, No. 8:17-cv-2246, 2019 U.S. Dist. LEXIS 31788, at *6 (M.D. Fla. Feb. 28, 2019) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005)).

When a claimant presents a "colorable" claim of a mental impairment, the ALJ must apply the Psychiatric Review Technique ("PRT") at step two. *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005); 20 C.F.R. § 404.1520a. The ALJ must assess a claimant's degree of functional limitation in four areas, including a claimant's ability to: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(2). The ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas" identified. *Id.* § 404.1520a(e)(4); *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) ("social security regulations require the ALJ to complete a PRT [form] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions").

If, after applying the PRT, the ALJ rates the functional limitations caused by the claimant's mental impairment to be "none" or "mild," then the ALJ will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). The ALJ must provide a specific explanation for her opinion, including the degree of limitation found in the functional areas. 20 C.F.R. § 404.1520a(c)(4), (e)(4). The ALJ must incorporate the results of the PRT into the findings and conclusions. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).

Here, the ALJ properly applied the PRT and found that Claimant's mental impairments of anxiety, depression, and a learning disorder, considered singly or in combination were non-severe and caused no more than mild limitation in his ability to perform basic mental work activities. R. 19. The ALJ found that Claimant had no more than mild limitations in interacting with others and concentrating, persistence, and pace. R. 20-21. The ALJ found Claimant had no limitations in understanding, remembering, and applying information, and in adapting and managing oneself. R. 21.

The ALJ relied on record evidence that: 1) Claimant's symptoms were well-managed with a conservative course of treatment with prescription drugs (Ex. 9F); 2) Claimant received mental health treatment from Dr. Tikku at the psychiatry

clinic at Fish Memorial Hospital (Ex. 21F); 3) his mental status examinations were generally normal from October 2016 to June 2018, other than one report in June 2018 that he had an anxious affect (Exs. 9F, 17F, and 21F/36); 4) Claimant reported good control with Zoloft (Ex. 9F, 17F, and 21F); 5) Claimant's learning disorders, first diagnosed while he was attending school to be a nurse practitioner/physician assistant after college, had not precluded him from performing skilled work (Ex. 11F, 13F/15); and 6) while affording his learning diagnosis great weight, the ALJ assigned the accommodations partial weight because Claimant had been able to perform skilled past relevant work at SGA levels, despite his learning impairments and his reported activities were inconsistent with significant mental impairments as he was able to: write a screenplay that won a semi-finalist award at a film festival, write a children's novel, and was starting to do graphic design work (Ex. 13F, 9F/13). R. 19-20. The ALJ also noted: Dr. Nicotra[6] found Claimant had an average working memory (Ex. 13F/11); Claimant was calm with euthymic mood, able to drive, had friends according to his own testimony, and had been a competitive cyclist (Ex. 22F/14); and Claimant was generally alert and oriented upon examination, and maintained intact judgment and insight (Ex. 5E). R. 20.

Claimant argues that the record evidence contradicts the ALJ's findings.

---

[6] Dr. Nicotra performed Claimant's psychoeducational assessment and diagnosed his reading disorder in 2010. R. 734.

Doc. No. 17 at 19. Claimant argues that he has at least moderate limitations in adapting or managing himself. *Id.* Claimant points to his reports of erratic sleep and feeling overwhelmed by his physical health issues and his anxiety. *Id.* (citing R. 892, 901, 905, 913, 920, 923). Claimant also claims that he has at least moderate limitations in understanding, remembering, and applying information. *Id.* Claimant relies on Dr. Nicotra's note that he had weak auditory processing skills that limited his ability to read, understand, and write when under pressure to perform and that his reading disorder would require additional time to complete assignments. *Id.*

Claimant is essentially asking this Court to reweigh the record evidence, which is something the Court cannot do. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Court finds that there was substantial evidence to support the ALJ's finding that Claimant mental impairments were non-severe. The ALJ relied on objective medical findings, Claimant's own reports to providers that his mental impairments were well-managed with treatment and prescription medication, Claimant's own self-reported activities, Dr. Tikku's treatment records, and Dr. Nicotra's testing records. R. 19-21, 28-29. Thus, there was substantial evidence to support the ALJ's decision and the Court finds no reason to disturb that decision on review.

Claimant also argues that the ALJ failed to incorporate his mental

limitations into his RFC, and as such, the error in finding his mental impairments non-severe was not harmless. Doc. No. 17 at 20. The finding of any severe impairment is enough to satisfy step two and if an ALJ finds any severe impairment at step two and proceeds beyond that step in the sequential analysis, any error in failing to find a claimant suffered from other severe impairments is harmless. *Lucas*, 2019 U.S. Dist. LEXIS 31788, at *7 (citing *Gray v. Comm' r of Soc. Sec.*, 550 F. App'x 850, 853-54 (11th Cir. 2013)). However, after making such a determination, an ALJ has an obligation to consider all of a claimant's impairments in combination. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011). "Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC." *Sumlin v. Saul*, 2020 U.S. Dist. LEXIS 231058, at *17 (M.D. Fla. Nov. 23, 2020) (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019)

In addition to the ALJ's discussion of Claimant's mental impairments in the step two analysis, the ALJ addressed Claimant's mental impairments with respect to the RFC. R. 24, 27-29. The ALJ discussed Claimant's treatment at Town Center Family Practice, his report of a history of good control of his anxiety on Zoloft, the statement of Lynn Bregman Blass, LMFT, the psychoeducational assessment conducted in February 2010 by Dr. Nicotra, Claimant's reading disorder diagnosis, Claimant's skilled past relevant work, Claimant's own reports

of activities that are inconsistent with significant mental impairment, including writing a screenplay and a children's book, giving great weight to the opinions of Nancy Dinwoodie, M.D. and James G. Brown, Ph.D., state agency psychiatric/psychological consultants who opined Claimant had no more than mild limitations, and Claimant's treatment records which have generally shown normal findings associated with Claimant's impairments of anxiety disorders, affective disorders, and history of learning disorders. R. 24, 27-29. The ALJ concluded that the RFC was consistent with the overall evidence. R. 29.

The ALJ's detailed discussion of Claimant's treatment records, her assignment of weight to various opinions and statements regarding Claimant's mental impairments, as well as consideration of Claimant's own statements and activities reflect that she considered the combined effects of all Claimant's impairments. R. 24-29. *See Nicols v. Comm'r of Soc. Sec.*, 679 F. App'x 792, 797 (11th Cir. 2017). As such, remand is not required on this issue. *Lucas*, 2019 U.S. Dist. LEXIS 31788, at *7; *Gray*, 550 F. App'x at 853-54.

Accordingly, it is **ORDERED** that:

1. This matter is **AFFIRMED**; and

2. The Clerk is directed to close the case.

**DONE** in Orlando, Florida, on June 2, 2021.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Bartholomew C. Zadel
Morgan & Morgan
988 Woodcock Road
Orlando, Florida 32803

Maria Chapa Lopez
United States Attorney
John F. Rudy, III
Assistant United States Attorney
400 N. Tampa St.
Suite 3200
Tampa, FL 33602

Christopher G. Harris, Chief Counsel, Region IV
John C. Stoner, Deputy Regional Chief Counsel
Megan E. Gideon, Branch Chief
Reginald V. Speegle, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Melinda Hart
Administrative Law Judge

Office of Hearing Operations
SSA Oho Hearing Ofc
Bldg 400, Suite 400
8880 Freedom Crossing Trail
Jacksonville, Florida 32256-1224